**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
THE LCF GROUP, INC.,

                      Plaintiff,

        -against-

COLUMBIA STEEL, INC. d/b/a COLUMBIA        **REPORT AND RECOMMENDATION**
STEEL, KRATOS EQUITY LLC, CHAMPION
ERECTORS, INC., A California Corporation,     **23-CV-7983 (JMA) (ST)**
FIRST COLUMBIA PROPERTIES, LLC,
TENKEY LLC, COLUMBIA STEEL
INC.-ESOP, THEISEN STEEL INC.,
16 RUE GRAND VALLEE, LLC,
CASMALIA2175, LLC, 627-48 SKYVIEW,
LLC, PRECISION FABRICATION
SYSTEMS LLC, SIERRA BONITA
THEISEN, LLC, and GUSTAVO THEISEN,

                     Defendants.
-------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

      Before the Court is a motion by Plaintiff to remand this action to New York state court.

The LCF Group , Inc. ("Plaintiff") brought this action against Columbia Steel, Inc. d/b/a Columbia

Steel, Kratos Equity LLC, Champion Erectors, Inc., First Columbia Properties, LLC, Tenkey LLC,

Columbia Steel Inc.-ESOP, Theisen Steel Inc., 16 Rue Grand Vallee, LLC, Casmalia2175, LLC,

627-48 Skyview, LLC, Precision Fabrication Systems LLC, Sierra Bonita Theisen, LLC, and

Gustavo Theisen (together, "Defendants") in the Nassau County Supreme Court alleging breach

of contract. Defendants then removed the action to this Court. The motion was referred to this

Court for a Report and Recommendation by the Honorable Joan M. Azrack. For the reasons set

forth below, the Court respectfully recommends that Plaintiff's motion to remand be GRANTED,

and that Plaintiff's request for attorneys' fees be DENIED.

## BACKGROUND

Many of the facts relevant to the instant motion are disputed by the parties. The following facts are drawn from the parties' declarations and affidavits submitted in conjunction with this motion, as well as the records from the Nassau County Supreme Court which Defendants submitted with their Notice of Removal. Where necessary, the Court has indicated facts that are in dispute.

On October 25, 2022, Plaintiff entered into an agreement with Defendant Columbia Steel, Inc.[1] MCA, at 1, 15; Defs.' Mem. Law Opp'n Pl.'s Mot. Remand ("Defs.' Opp'n") 1, ECF No. 12–5. The parties heavily contest the nature of the contract, including whether it truly constitutes a "loan" or a purchase of future receivables, and whether the substance of the agreement complies with applicable law, details which are largely inapposite to the instant motion. Defs.' Opp'n, at 1–5; Pl.'s Reply Mem. Law Further Supp. Mot. Remand ("Pl.'s Reply") 1–2, ECF No. 12–13. While the parties dispute the *true* nature of the contract, they do not dispute that it at least *describes* the transaction as one in which Plaintiff was purchasing, and Defendant Columbia Steel was selling, future receivables. MCA, at 1. Thereafter, the contract required Defendant Columbia Steel to make recurring payments to Plaintiff according to specified schedules. MCA, at 1.

Defendant Columbia Steel entered into this transaction, as the "Merchant," and twelve guarantors—eleven corporate guarantors and one personal guarantor—guaranteed performance under the agreement. MCA, at 1, 7–9; Defs.' Opp'n, at 2, 4. On October 25, 2022, Gustavo Theisen, the individual Defendant, who was the owner and principal of all twelve corporate

---

[1] While the agreement is dated October 24, 2022, it was signed by Gustavo Theisen on behalf of all Defendants on October 25, 2022. Defs.' Notice of Removal, Ex. 18, ECF No. 1–18; Pl.'s Reply Decl., Ex. 3, ECF No. 12–10. Both parties have filed copies of the agreement, as cited here. The Court will hereinafter cite to the entire agreement as the "MCA," using the agreement's internal pagination. While the HelloSign receipt documenting the electronic signature of the agreement does not have a page number, it will be referenced as page 15.

Defendants,[2] *see* Pl.'s Reply, at 7, signed the agreement on behalf of Defendant Columbia Steel,

the eleven corporate guarantors, and himself, on three separate signature lines. MCA, at 9; Defs.'

Opp'n, at 2.

    The agreement contains two primary subdivisions—a "Merchant Agreement" and a

"Security Agreement and Guaranty."[3] MCA, at 1–9. The first component, the Merchant

Agreement, begins as follows:

### MERCHANT AGREEMENT
Agreement dated **October 24, 2022** Between **THE LCF GROUP, INC.** (the **Company**) and the
merchant listed below ("the **Merchant**")

*MERCHANT INFORMATION*
Merchant's Legal Name: **Columbia Steel, INC.**
Merchant's DBA Name: **Columbia Steel**
Type of entity: **Incorporated**
Physical Address: **2175 North Linden Avenue** City: **Rialto** State: **California** Zip: **92377**
Mailing Address: **2175 North Linden Avenue** City: **Rialto** State: **California** Zip: **92377**
Phone Number: Cell Phone: Email: **mcranon@csirialto.com**

MCA, at 1. The contract requires that this section be separately initialed, and Defendant

Theisen initialed accordingly. MCA, at 1. The Guaranty begins as follows:

**SECURITY AGREEMENT AND GUARANTY**

**Between THE LCF GROUP, INC.("Company"),**
**AND**
**Columbia Steel, INC. DBA Columbia Steel("Merchant")**
Physical Address: **2175 North Linden Avenue** City **Rialto** State **California** Zip: **92377** . . .

**AND Guarantors(collectively referred to as "Corporate Guarantors"):** KRATOS EQUITY
LLC; CHAMPION ERECTORS, INC., A CALIFORNIA CORPORATION; FIRST
COLUMBIA PROPERTIES, LLC; TENKEY, LLC; Columbia Steel INC – ESOP; Theisen Steel

---

[2] Defendants assert that there are only eleven corporate Defendants because there is no such entity by the name of "Columbia Steel Inc. – ESOP." Defs.' Opp'n, at 18 n.12. However, the contract lists an entity by that name as a guarantor, which contract was signed by the individual Defendant. MCA, at 7, 9, 15. Defendants do not explain why the contract was executed in this way. In any event, the issue is not relevant to the instant motion and need not be addressed at this juncture.

[3] It should be noted that, while there are two primary components to the agreement, it is one contract. The terms of the Merchant Agreement and the Security Agreement and Guaranty both reciprocally incorporate the terms of the other, including capitalized terms, *see* MCA, at 1, 9, and the agreement as a whole uses continuous internal pagination, *see* MCA, at 1–14.

INC; 16 RUE GRAND VALLEE, LLC; CASMALIA2175, LLC; 627-48 SKYVIEW, LLC; PRECISION FABRICATION SYSTEMS LLC; SIERRA BONITA THEISEN, LLC[4]

MCA, at 7.

      The agreement contains several provisions relevant to the instant motion. For example, one provision warrants that the information provided to Plaintiff in the contract and in other documents is "true, accurate and complete in all respects." MCA, at 1. One provision prohibits Defendant Columbia Steel from ceasing its business operations without prior written consent of Plaintiff. MCA, at 3, § 1.12(d). Another provision provides that Defendant Columbia Steel and the guarantors "have a continuing affirmative obligation to inform [Plaintiff] of any material adverse change in their financial condition, operation or ownership." MCA, at 4, § 2.1. A further provision states that Defendant Columbia Steel cannot "change any of its places of business without [Plaintiff's] prior written consent." MCA, at 4. Yet another provision states "Merchant is required to give Company seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock." MCA, at 5.

      Finally, three provisions provide methods of communication between the parties and terms for the resolution of disputes. Section 4.3, entitled "Notices," states:

> All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail with return receipt requested or United States Postal Service Priority Mail with tracking to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective only upon receipt.

MCA, at 5. Section 4.5, entitled "Binding Effect; Governing Law, Venue and Jurisdiction," provides as follows:

> GUARANTOR HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS, COMPLAINT AND OTHER PROCESS ISSUED IN ANY SUCH ACTION OR SUIT and acknowledges that the transmittal of documents instituting

---

[4] This provision contains IRS Employer Identification Numbers for some of the entities, which are redacted from the agreement, and which the Court has omitted from this quotation.

> any Suit against Merchant and/or Guarantor may be served upon Company and Guarantor via the email address located within the [agreement] and that such transmittal is reasonably calculated to apprise Merchant and/or Guarantor of the pendency of the action and afford it an opportunity to respond.[5]

MCA, at 5. This paragraph is followed by a line to be separately initialed, and Defendant Theisen initialed as indicated. MCA, at 5. The only provision which provides email addresses for the respective sides to the transaction is Section 6, entitled "Arbitration," which states that the parties may elect to settle disputes in arbitration, and in a subsequent paragraph states as follows: "The Parties consent to electronic service of process, with service to be made to the following email addresses mcranon@csirialto.com and legal@thelcfgroup.com, and/or service in accordance with section 4.3, supra, via certified mail with return receipt requested or United States Postal Service Priority Mail with tracking." MCA, at 6. Section 4.3 is the "Notices" section, detailed above.

Within one month of executing the contract, Defendant Columbia Steel stopped making payments and, on November 23, 2022, Plaintiff filed this action in Nassau County Supreme Court against Defendants to recover the outstanding balance. Notice of Removal, Ex. 1, at ¶¶ 24, 33, 37, ECF No. 1–1; Defs.' Opp'n, at 1, 5. Ultimately, three months after the execution of the contract, in January 2023, Defendant Columbia Steel went out of business due to financial difficulties. Defs.' Opp'n, at 2; Decl. Gustavo Theisen ("Theisen Decl.") ¶ 2, ECF No. 12–7.

The facts regarding the service of the state court complaint and summons upon the several Defendants are largely disputed, and form the basis of this motion to remand. According to Plaintiff, all thirteen Defendants were served on December 14, 2022, by process server Trent Mackie. Pl.'s Mem. Law Supp. Mot. Remand ("Pl.'s Mem."), at 6, ECF No. 12–4. Mackie's

---

[5] The agreement often uses the word "Guarantor," singular, although there are multiple guarantors, including throughout the Guaranty. See MCA, at 8 ("In the event of default or breach of this Agreement, Company may seek to recover from Guarantor . . . ."). In some instances, a single provision uses both the singular "Guarantor" and the plural "Guarantors," although the variation appears to just be due to the grammatical context of the sentences. See MCA, at 4, § 2.12.

affidavits of service state that he served Defendants by delivering copies of the Summons, Verified Complaint, and Notice of Electronic Filling to "Kathy Jones" at 2175 N. Linden Avenue, Rialto, California 92377. Levy Aff. Supp. Mot., Ex. 1, ECF No. 12–2. The affidavits of service for the twelve corporate Defendants list Jones as a "Human Resources Clerk of the corporation" and indicate that she was authorized to accept service on their behalf. *Id.* For the individual Defendant, the affidavit states that the documents were left with "Kathy Jones," a person of suitable age and discretion, and that the premises was Defendant Theisen's actual place of business.[6] *Id.* at 21. The affidavit further states that, the following day, on December 15, a copy of the documents was mailed with the United States Postal Service, via First Class mail, in an envelope marked "Personal and Confidential" to the individual Defendant Theisen at the business address on North Linden Avenue. *Id.*

---

[6] Specifically, the affidavit states that the documents were served on "Gustavo Theisen . . . [b]y delivering a true copy of above-named documents to Kathy Jones, a person of suitable age and discretion. Said premises is recipient's [ ] home address [ ] last known address per DMV records [X] actual place of business." *Id.* at 21. Defendants do argue that "[t]he vague reference to 'recipient' in the form affidavit makes the affidavit unclear as to whether it is referring to the address of the actual place of business of the recipient Kathy Jones or the person being served, Defendant Theisen." Defs.' Opp'n, at 22. This argument strains credulity and can be readily dispensed with. The subsequent, unselected method of service on the form, "Affixing to Door," states that the copy was affixed to the door "of said premises, which is recipient's . . . " and lists the same categories as above, before continuing that the "Deponent had previously attempted to serve the above named recipient on:" and providing lines to write in dates and times. Levy Aff. Supp. Mot., Ex. 1, at 21. A copy affixed to a door has no other intended "recipient" than the defendant to an action, nor would one attempt to serve, on multiple occasions, a "recipient" who is not the defendant, in order to require multiple lines to fill in dates and times. Moreover, the categories "home address," "last known address . . . ," and "actual place of business" obviously allude to common locations prescribed by statute for service of defendants, including the Federal Rules of Civil Procedure and those of several states. In other words, these statutes often permit defendants to be served at the *defendant's* "home address" or "actual place of business." It is apodictic that such statutes do not refer to the addresses of someone else, unrelated to the lawsuit.

Similarly, the "Non-Military Statment [sic]," which is selected on the form in question, states that the "Deponent asked person spoken to whether the recipient was presently in military service of the United States Government and was informed that recipient was not." *Id.* The sentence makes clear that "person spoken to" refers to the person of suitable age and discretion with whom service was left, and that "recipient" refers to the person being served. Moreover, there is little reason to ask the person of suitable age and discretion with whom service is left whether such person is presently in military service, as this question is clearly designed to establish compliance with the Servicemembers Civil Relief Act, which protects enlisted defendants, not enlisted persons with whom service for un-enlisted defendants is left. Notwithstanding whether the address was Defendant Theisen's actual place of business, the Court confidently concludes that the affidavit at least alleges that the address was Defendant Theisen's actual place of business.

It is undisputed that Jones was an employee of Defendant Columbia Steel, but none of the other corporate Defendants, and was employed in a non-management, human resources role, handling primarily payroll matters, at the 2175 North Linden Avenue address. Defs.' Opp'n, at 21; Theisen Decl. ¶ 5; Decl. Kathryn Jones ("Jones Decl.") ¶¶ 2–3, 6, ECF No. 12–8. While Defendants allege that Jones' title was not "Human Resources Clerk," they do not allege what her title was, although they do aver that she worked in the Human Resources department. Jones Decl. ¶¶ 3, 5; Defs.' Opp'n, at 20; *see* Theisen Decl. ¶ 5. Neither party disputes that Jones was, indeed, given the documents, and Jones, in her declaration, does not deny having been given them.[7] *See* Jones Decl.; Theisen Decl. ¶ 8. Defendants, however, allege that Jones was not authorized to accept service on Defendant Columbia Steel's behalf, or on behalf of any of the corporate entities that did not employer her. Defs.' Opp'n, at 5, 18–21; Jones Decl. ¶¶ 4, 6; Theisen Decl. ¶ 5.

Plaintiff, for its part, does not allege that Jones was authorized to accept service on behalf of the corporate Defendants. Rather, Plaintiff alleges that Jones *told* Mackie that she was authorized to accept service on behalf of the corporate Defendants. Suppl. Aff. Trent Mackie ("Mackie Suppl. Aff."), at 1, ECF No. 12–11; Pl.'s Reply, at 3, 7. Specifically, in the original affidavits of service, Mackie states that she was authorized to accept service on behalf of the corporate Defendants, but does not specify a reason why she was believed to be so authorized. *See* Levy Aff. As will be discussed, the sufficiency of service was later contested in state court, at which time Plaintiff submitted a supplemental affidavit from Mackie, sworn to on August 29, 2023, stating that the basis for this assertion in the original affidavits was that he was told as such. Mackie Suppl. Aff. Defendants, on the other hand, have submitted a declaration from Jones in which she denies having said this, "because that is not something that [she] would ever say." Jones

---

[7] Indeed, one wonders how the process server could have known she worked in Human Resources had he not spoken to her.

Decl. ¶ 4. Moreover, Defendants allege that Jones never gave the documents to Theisen. Defs.'
Opp'n, at 6, 22; Theisen Decl. ¶ 9. Theisen also alleges to have never received the copy that the
process server mailed to that office location. Theisen Decl. ¶ 8.

Neither of the parties alleges whether Theisen was or was not present at the office at the
time the documents were provided to Jones, but Defendants appear to allege that it was unlikely
that he was. Specifically, Theisen, in his declaration, states as follows:

> At the time the papers were purportedly served in mid-December 2022, I was no
> longer coming into the office as frequently, because the business was shutting
> down. I was often out meeting with clients and doing work from home. If I did
> come in, it was not for the entire day.

Theisen Decl. ¶ 7; *see also* Defs.' Opp'n, at 22. Similarly, Jones stated that, by mid-December
2022, "things were winding down" at the Columbia Steel office and "Mr. Theisen was not even
coming into the office very frequently anymore." Jones Decl. ¶ 7. Defendant Theisen avers that
"[w]e shut down the business entirely, moved everything out of the business premises at . . . Linden
Avenue[,] . . . and shut down the website and telephone by about February 2023."[8] Theisen Decl.
¶ 2. However, while Defendants do challenge the *frequency* with which Theisen went to the office,
Defendants do not dispute that the Linden Avenue address was Theisen's office, nor that the office
was still open in December 2022.

Finally, Defendants allege that the state-registered address for three of the corporate
Defendants was not the Linden Avenue location, but rather was 2345 North 2nd Avenue, Upland,
California 91784.[9] Decl. David T. Azrin ("Azrin Decl."), at 2–4, ECF No. 12–6; Defs.' Opp'n, at
6, 21. Plaintiff, for its part, does not dispute the registered address of the three corporate Defendants
in question. Rather, Plaintiff submits that Defendant Theisen *represented* to Plaintiff that the

---

[8] It is not clear who "we" refers to, but Defendant Theisen seemingly avers that it includes himself.
[9] According to Defendant Theisen, at the time service was attempted, the 2nd Avenue address was his personal
residence. Theisen Decl. ¶ 6.

address of all of the corporate Defendants was the Linden Avenue address, because he signed the contract as the principal of all of the corporate entities, and the only address that was provided therein was the Linden Avenue address.[10] Pl.'s Reply, at 3, 6–7, 7 n.8.

Following the disputed service attempt, Defendants did not appear or otherwise respond to the state court action. *See* Pl.'s Mem., at 7–8, 2 n.5; Defs.' Opp'n, at 6, 22; Theisen Decl. ¶ 9. On July 21, 2023, Plaintiff brought a motion by order to show cause for default judgment and attachment in state court. Pl.'s Mem., at 2 n.5; Defs.'Opp'n, at 6. In connection with that motion, Plaintiff's counsel filed an "Affirmation of Additional Notice Pursuant to CPLR § 3215(g)" which affirms, under penalty of perjury, as follows:

> On January 27, 2023, pursuant to CPLR 3215 (G)(3)(i) and CPLR 3215 (G)(4)(i) I served or caused to be served additional notices of this action to Defendants, by mailing copies of the Summons and Verified Complaint to Defendants at the following addresses:
>
> Gustavo Theisen
> 2175 N Linden Avenue, Rialto, CA 92377

Notice of Removal, Ex. 38, ECF No. 1–38.[11]

However, Defendants allege that they did not become aware of the action until August 5, 2023, when Theisen received the motion papers for the default judgment motion. Defs.' Opp'n, at 6, 22; Theisen Decl. ¶ 9. Specifically, Defendant Theisen avers that the "motion for default papers

---

[10] The contract does, indeed, contain that address and only that address. MCA, at 1, 7. While it identifies the address as that of Defendant Columbia Steel, and does not specifically identify addresses of the corporate guarantors, the agreement provides that "the respective parties to th[e] Agreement," agreed to receive "[a]ll notices, requests, consent, demands and other communications hereunder . . . at the addresses set forth in this Agreement." MCA, at 5. The signatory guarantors were parties to the agreement, and were represented as being owned by the same principal as Defendant Columbia Steel, whose address was detailed. *See* MCA, at 7, 9. It is also of note that the contract was executed a mere 1 or 2 weeks prior to the alleged default, *see* Compl. ¶¶ 18, 24, 37–38 (alleging contract execution on October 24, 2022, and requesting interest from November 3, 2022), and a mere 7 or 8 weeks prior to Defendants' attempt, on December 14, 2022, to effectuate service.

[11] This document is within the scope of the parties' submissions on this motion. Specifically, Defendants' memorandum quotes from and cites to the document in connection with an argument presented. *See* Defs.' Opp'n, at 23 n.14. Defendants' memorandum also cites to an affidavit Theisen submitted in state court in opposition to the motion for default, to which the CPLR affirmation was attached as an exhibit. *See* Defs.' Opp'n, at 6, 10; Notice of Removal, Ex. 33 ("Theisen State Aff.") ¶ 15, ECF No. 1–33.

were forwarded to [Theisen's] new residence address on August 5, 2023, at 2618 San Miguel Drive #127, Newport Beach, California," and that "[a]ccording to the tracking information filed in the state court, plaintiff's counsel sent the papers by Priority Mail (rather than First Class mail) and the papers were forwarded and did not arrive until August 5, 2023." Theisen Decl. ¶ 9. The referenced tracking information was provided as an exhibit with Theisen's affidavit submitted in state court. Theisen's State Aff. ¶ 11; Notice of Removal, Ex. 36, ECF No. 1–36. The state court affidavit and its exhibit indicate that the default papers were originally sent to the 2nd Avenue residence, which residence Theisen had apparently sold in March 2023, before being forwarded to his new address at 2618 San Miguel Drive #127, Newport Beach, California. Theisen's State Aff. ¶¶ 11–12, 14; Notice of Removal, Ex. 36; *see also* Defs.' Opp'n, at 6; Theisen Decl. ¶ 9.

In that affidavit, Theisen also states that, in July 2023, Plaintiff's counsel submitted an Affirmation of Service to the state court stating that he attempted to email the default papers to Columbia Steel's email address, "mcranon@csirialto.com," and also mailed them via first class mail to the Linden Avenue address. Notice of Removal, Ex. 33, ¶¶ 12, 14. Theisen avers that he never received these communications because the email address was "defunct" and the Linden Avenue office was closed. *Id.* ¶ 14. In the affirmation of service, attached to the affidavit as an exhibit, Plaintiff's counsel states as follows:

> On July 24, 2023, I served the within Order to Show Cause, with a copy of the papers upon which it was granted, by mailing a true and complete copy of same by first-class mail in a postage pre-paid envelope and depositing same in a post office or official depository of the United States Postal Service within New York State, at the last known address of the addressees as set forth herein, upon . . . .

Notice of Removal, Ex. 37, ECF No. 1–37. The affirmation proceeds to list Defendant Theisen as having been mailed the motion papers at both the Linden Avenue and 2nd Avenue addresses, and

the corporate Defendants as having been mailed the motion papers at the Linden Avenue address. *Id.*

After receiving the default papers in August 2023, Defendants appeared in Nassau County Supreme Court on August 16, 2023, and filed a cross-motion to dismiss for lack of personal jurisdiction due to ineffective service, and challenged Plaintiff's request to attach Defendants' properties. Pl.'s Mem., at 1, 2 n.5, 3, 7–8; Defs.' Opp'n, at 6–7, 10; Notice of Removal, Ex. 31, ECF No. 1–31; Ex. 32, ECF No. 1–32. The parties submitted full briefing before the state court regarding whether service was properly effectuated, and the applicable caselaw regarding attachment of out-of-state property, and participated in oral argument thereon. Pl.'s Mem., at 1, 2 n.5, 3, 7–8; Defs.' Opp'n, at 6–7, 10; Notice of Removal, Ex. 32; Notice of Removal, Ex. 45, ECF No. 1–45; Pl.'s Reply, at 5. The parties also scheduled at least one conference in state court, a settlement conference, which was scheduled for November 1, 2023.[12] Levy Reply Decl., Ex. 5, ECF No. 12–12. Plaintiff further contends that other conferences were scheduled, which Defendants did not dispute. Pl.'s Mem., at 3, 8, 10; Pl.'s Reply, at 5.

On October 26, 2023, before the state court ruled on the parties' cross-motions, Defendants filed a notice of removal in federal court. *See* Notice of Removal, ECF No. 1; *see also* Pl.'s Mem., at 1 (referring to Defendants' cross-motion as *sub judice*). Plaintiff's instant motion to remand followed. The Honorable Joan M. Azrack referred the motion to this Court for Report and Recommendation. *See* Referral Order dated April 16, 2024.

## LEGAL STANDARD

A party may remove an action brought in state court over which the federal court would have original jurisdiction. 28 U.S.C. § 1441(a). To do so, a "notice of removal of a civil action or

---

[12] As the action was removed to federal court six days before the date of this conference, the Court presumes that the settlement conference did not occur.

proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "Notwithstanding the statutory language," the Supreme Court has held that "the 30-day removal period is only triggered after 'formal service' of the summons and complaint." *O'Hara v. Cohen-Sanchez*, No. 22-CV-6209, 2023 WL 5979176, at *2 (E.D.N.Y. Aug. 28, 2023) (quoting *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999)). As a result, the clock for removal does not begin until service is properly effectuated under applicable state law. *Id.* at *4 (collecting cases). Moreover, when there are multiple defendants, the clock does not begin until the last defendant is served. *Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 65 (2d Cir. 2012). "If a notice of removal is untimely, the case must be remanded to the state court." *Abbo-Bradley v. City of Niagara Falls*, 73 F.4th 143, 146 (2d Cir. 2023) (citing 28 U.S.C. § 1447).

On a motion to remand, "[t]he removing defendant bears the burden of demonstrating that removal of the action is proper." *Wade v. Burns*, 803 F. App'x 433, 435 (2d Cir. 2020) (citation omitted). This burden requires that the defendant demonstrate both the jurisdictional and procedural propriety of removal. *O'Hara*, 2023 WL 5979176, at *3. In deciding a motion to remand, the court construes all factual allegations in favor of the party seeking the remand. *Fouad v. Milton Hershey Sch. & Sch. Tr.*, 523 F. Supp. 3d 648, 652 (S.D.N.Y. 2021). A motion to remand is evaluated on the basis of the allegations as pleaded at the time of removal. *Vera v. Saks & Co.*, 335 F.3d 109, 116 n.2 (2d Cir. 2003) (citation omitted). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against

- 12 -

removability." *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (citation omitted); *see also Taylor v. Medtronic, Inc.*, 15 F.4th 148, 150 (2d Cir. 2021) (same).

While the rules regarding the materials a court may consider on a motion to remand have largely involved the materials properly considerable for jurisdictional challenges to removal, it is incontrovertible that a court, in considering the procedural propriety of removal, may consider the notice of removal and its attachments. Indeed, the Second Circuit has acknowledged that the purpose of rules requiring removing parties to file copies of the state court record with the notice of removal is to provide courts with the documentation needed to assess the propriety of removal. *See Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth.*, 435 F.3d 127, 133 (2d Cir. 2006) (noting that the purpose of WDNY Local Civil Rule requiring index of all state court documents was to "afford[] the District Court . . . opportunity to assess whether the case should remain in a federal court"); *see also* 28 U.S.C. § 1446 (requiring defendants to file "a copy of all process, pleadings, and orders"); *Pizarro v. Langer Transportation Corp.*, No. 21-CV-5439, 2021 WL 5326433, at *6 (S.D.N.Y. Nov. 16, 2021) (noting that EDNY and SDNY removed filing requirement from local rule as duplicative of 28 U.S.C. § 1446). This comports with federal courts' obligations to "take[] the [removed] action in the posture in which it existed when it [wa]s removed from a state[] court['s] jurisdiction" and to "give effect to all actions and procedures accomplished in a state court prior to removal." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 108 (2d Cir. 2006) (quoting *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 387 (S.D.N.Y. 2001)). In order to determine the timeliness of removal and the procedural compliance of service, the court necessarily considers the Notice of Removal and its attachments here.

# DISCUSSION

In the case at bar, Plaintiff raises two challenges to the propriety of removal. First, Plaintiff argues that removal was untimely because Defendants were properly served under New York law more than 30 days before Defendants filed the Notice of Removal. Pl.'s Mem., at 1–2, 6–7. Alternatively, Plaintiff argues that, even if Defendants were not properly served, Defendants waived the right to remove by demonstrating an intent to litigate in state court. Pl.'s Mem., at 2–3, 8–9. Thus, Plaintiff argues, the action should be remanded to the Nassau County Supreme Court, and Plaintiff should be awarded attorneys' fees pursuant to 28 U.S.C. § 1447(c). Pl.'s Mem., at 4, 9–10. The Court will first address the merits of Plaintiff's motion to remand before turning to Plaintiff's request for attorneys' fees. For the reasons forgoing reasons, the Court respectfully recommends that Plaintiff's motion to remand be GRANTED, and that Plaintiff's request for attorneys' fees be DENIED.

## I. Plaintiff's Motion to Remand Should Be Granted Because Defendants' Notice of Removal Was Untimely, and Defendants Waived Their Right to Remove.[13]

---

[13] The basis for the Court's jurisdiction, as alleged in the Notice of Removal, is diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The parties do not contest that diversity jurisdiction is proper; indeed, Plaintiff's argument substantially depends upon the assertion that the complaint facially revealed that diversity jurisdiction existed. *See* Pl.'s Mem., at 1–2, 7. However, Defendants' Notice of Removal is defective in that it conclusorily pleads diversity jurisdiction and fails to separately identify the domiciles of the corporate Defendants, as required both under caselaw and Local Civil Rule 81.1. *Ocean Units LLC v. Illinois Union Ins. Co.*, 528 F. Supp. 3d 99, 102 (E.D.N.Y. 2021); *Spartan Bus. Sols. LLC v. Marquis Cattle Co. Inc.*, No. 23-CV-06258, 2023 WL 7294886, at *2 (W.D.N.Y. Nov. 6, 2023); *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016); Loc. Civ. R. 81.1. The Court is entitled to look outside of the pleadings to determine whether diversity jurisdiction is proper. *Neubeck v. All Am. Ins. Co.*, 651 F. Supp. 3d 646, 649 n.1 (W.D.N.Y. 2023); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010). Here, the Corporate Disclosure Statement reveals that the parties are completely diverse. *See* Corporate Disclosure Statement, ECF No. 2. However, in addition to being untimely, the defective pleading in the Notice of Removal provides two additional reasons to question its propriety. First, Corporate Disclosure Statements are not intended to relieve parties of their obligation to properly plead citizenship under applicable caselaw, as the Advisory Committee specifically noted in the commentary to Federal Rule of Civil Procedure Rule 7.1(a)(2). Fed. R. Civ. P. 7.1, Advisory Committee Notes, 2022 Amendment ("The disclosure does not relieve a party that asserts diversity jurisdiction from the Rule 8(a)(1) obligation to plead the grounds for jurisdiction."); *Ocean Units*, 528 F. Supp. 3d at 102 (noting that 28 U.S.C. § 1446 effectively incorporates the pleading requirements of Rule 8(a)). Moreover, Local Civil Rule 81.1 specifically requires that citizenship be affirmatively plead in the Notice of Removal, a requirement which remains in the most recent amendment to the rule, effective as of July 1, 2024, despite the fact that FRCP 7.1 inarguably existed at the time it was written.

A. *Defendants' Notice of Removal Was Untimely Because Defendants Were Properly Served More Than 30 Days Prior to Filing.[14]*

On this motion to remand for untimely removal, the Court must examine whether, and when, Defendants were properly served in the New York state court action, and thus must examine whether service was properly effectuated under New York law. *See O'Hara*, 2023 WL 5979176, at *4 (collecting cases). More specifically, the Court must examine when the *last* Defendant was properly served under New York law. *Pietrangelo*, 686 F.3d at 65. These questions will determine when the 30-day removal period began for purposes of 28 U.S.C. § 1446(b)(1). *O'Hara*, 2023 WL 5979176, at *4; *Silverman, Tr. of Ests. of Nat'l Events Holdings, LLC v. Citibank, N.A.*, No. 1:22-CV-5211, 2023 WL 2753055, at *2–3 (S.D.N.Y. Mar. 31, 2023).

Plaintiff argues that Defendants were properly served on December 14, 2022, when the process server personally delivered the complaint and summons to all thirteen Defendants at the Linden Avenue address, because the affidavits of service that Plaintiff filed are *prima facie* evidence of proper service. Pl.'s Mem., at 2, 6. Plaintiff further argues that, even if there are disputed issues of fact regarding whether service was proper, all disputed factual questions are resolved in favor of remand. Pl.'s Mem., at 2, 6.

In response, Defendants argue that they were not properly served, for the following reasons: (1) the person served, Kathy Jones, was only employed by one of the corporate Defendants, Columbia Steel, and could not reasonably believed to be authorized to accept service of process on behalf of entities which did not employ her; (2) with respect to Defendant Columbia Steel, Jones was a lower-level employee who was not authorized under CPLR § 311 to accept service of process, as evidenced by the title of "Clerk" that the process server indicated in the

---

[14] The Court presumes familiarity with the record cites contained in the Background section, *supra*, which are not re-cited throughout this discussion. Instead, all citations herein are to facts that have not been previously cited. In some instances, when quoting contractual language, emphasis has been added.

affidavit of service; (3) with respect to the other corporate Defendants which did not employ Jones, Jones was not authorized by CPLR § 311 (personal service upon corporation) or CPLR § 311-a (personal service on limited liability companies) to accept service on their behalves; (4) with respect to Defendant Columbia Steel, Jones did not represent herself as being authorized to accept service of process; (5) for three of the corporate Defendants, their registered addresses with the California Secretary of State were not the Linden Avenue address, and thus it was not reasonable to believe they could be served at that location; (6) the process server's affidavits are unreliable because they misstate Kathy Jones' height and title; and (7) the process server's original affidavits were defective because they do not state the basis for the knowledge that Jones was authorized to accept service, and the supplemental affidavit in which the process server averred that Jones told him she was authorized to accept service was both untimely filed, and is unreliable because it was filed 9 months after service.  Defs.' Opp'n, at 1, 5, 16–22.

With respect to the individual Defendant, Theisen, Defendants argue that (1) Theisen did not receive the documents that were left with Kathy Jones nor mailed to the Linden Avenue address; (2) "at the time of the alleged service . . . the business was on the verge of closing . . . [and] Mr. Theisen was not even coming into the office very frequently. Most of the time he was either visiting with customers or working at home"[15]; and (3) the affidavit is inaccurate and conclusory because the process server misstates Jones' height and age, does not indicate whether Theisen was present at the time of service, and does not indicate how it was known that the location was Theisen's "actual place of business."  Defs.' Opp'n, at 6, 22–23. Thus, Defendants argue, at

---

[15] While not entirely clear, the Court understands the argument to be that the Linden Avenue location was not Defendant Theisen's "actual place of business" because he was only infrequently going there. However, even Defendant Theisen's affidavit characterizes the location as "the office," and distinguishes it from "work[ing] from home." Theisen Decl. ¶ 7. It also admits that he was still working there, albeit "not for the entire day," does not allege that he had any other alternate places of business, and indicates that the office was not ultimately vacated until February, two months after the attempted service. *Id.* ¶¶ 2, 7. Thus, the Court finds any argument that the Linden Avenue address was not Theisen's place of business to be unavailing.

least one of the Defendants was not properly served and, under the last served rule, the removal period had not begun. Defs.' Opp'n, at 1, 14–15, 21–22, 24. To that end, Defendants argue that it does not matter that they are aware of the lawsuit, because actual receipt does not cure defective service.[16] Defs.' Opp'n, at 11–14.

On reply,[17] Plaintiff argues that service on Defendant Theisen was proper because Theisen was served at his actual place of business—specifically, the address that Theisen provided to Plaintiff as the business address when negotiating the contract—upon a person of suitable age and discretion, which is proper under CPLR § 308(2). Pl.'s Reply, at 3, 6–7. Moreover, Plaintiff argues, all of the corporate Defendants were owned by Theisen, who provided that address, at which Jones was found when the process server went to the location. *Id.* at 3, 7. Plaintiff avers, again, that Jones told the process server that she was authorized to accept service on behalf of the corporate Defendants, and argues that the process server was entitled to rely on that statement, and was not obligated to do additional investigation into the veracity of that representation. *Id.* at 3–4, 7. Plaintiff further argues that it was reasonable to believe her statement because she had been found at the corporate Defendants' identified address. *Id.* at 7.

In sum, Plaintiff argues that service was proper under New York law, relying on the information contained in the parties' contract. Looking to the contract, Plaintiff's argument is

---

[16] Defendants also raise two arguments in a footnote regarding certificates of conformity and whether the affidavit of addition mailing, which was filed pursuant to CPLR § 3215(g) in moving for default, was conclusory. Under well-established precedent, the Court rejects these arguments, raised only in a footnote, as waived. *See, e.g.*, *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, No. 12 CIV. 7372 (AT), 2020 WL 264146, at *2 (S.D.N.Y. Jan. 17, 2020); *R.R. v. Scarsdale Union Free Sch. Dist.*, 366 F. App'x 239, 242 (2d Cir. 2010).

[17] As Defendants bear the burden of persuasion on this motion, the Court considers Plaintiff's arguments on reply. *Kahlon v. Yitzhak*, 270 F. Supp. 3d 583, 588 (E.D.N.Y. 2017) (noting that defendants have burden of persuasion on motions to remand). In any event, Plaintiff's arguments all either cover the same points raised in their opening memorandum, such as elaborating on the extent to which Defendants participated in state court conferences, or respond squarely to Defendants' arguments in opposition, including Defendants' argument regarding the registered address of the three corporate Defendants. Thus, the Court does not deem the arguments to be waived. *Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 23 (E.D.N.Y. 2023), *aff'd*, No. 19-CV-3343, 2024 WL 3643269 (E.D.N.Y. Aug. 2, 2024).

correct, but relies upon the wrong provisions thereof. Indeed, the contract contains provisions in which Defendants expressly agreed to waive formal service. Specifically, Section 4.5 of the contract, entitled "Binding Effect; Governing Law, Venue and Jurisdiction," states as follows:

> GUARANTOR HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS, COMPLAINT AND OTHER PROCESS ISSUED IN ANY SUCH ACTION OR SUIT and acknowledges that the transmittal of documents instituting any Suit against Merchant and/or Guarantor may be served upon [Plaintiff] and Guarantor via the email address located within the [agreement] and that such transmittal is reasonably calculated to apprise Merchant and/or Guarantor of the pendency of the action and afford it an opportunity to respond.

Only one provision in the agreement provides email addresses for the respective parties—Section VI, entitled "Arbitration." That provision states as follows: "The Parties consent to electronic service of process, with service to be made to the following email addresses mcranon@csirialto.com and legal@thelcfgroup.com, and/or service in accordance with section 4.3, supra, via certified mail with return receipt requested or United States Postal Service Priority Mail with tracking." Section 4.3, entitled "Notices," similarly provides for certified mail with return receipt requested, or Priority Mail with tracking, adding only that such mail should be sent to "the addresses set forth in this Agreement" and that notices "shall become effective only upon receipt."

These provisions waive formal service. To be sure, while the contract language states that "guarantor hereby waives personal service," singular, the agreement frequently refers to the collective guarantors in the singular, including multiple times throughout the Guaranty.[18] Indeed, Defendants acknowledge that all of the Defendants, apart from Columbia Steel, were guarantors to the agreement. Defs.' Opp'n, at 2. Moreover, while the provision does not mention that "Merchant" waives personal service, the provision ostensibly authorizes the guarantors to accept

---

[18] Examples of this were discussed *supra*, at footnote 5.

service on Defendant Columbia Steel's behalf. Specifically, the provision states that "any Suit against *Merchant* and/or Guarantor may be served upon [Plaintiff] and Guarantor . . . [as] such transmittal is reasonably calculated to apprise *Merchant* and/or Guarantor of the pendency of the action."

Section 4.5 also refers to the service provisions in Section VI, the latter of which supplies the email addresses that Section 4.5 calls for. Section VI, in turn, has no limitations with respect to "Merchants" or "Guarantors." Rather, the provision states that "[t]he *Parties* consent to electronic service of process." Defendants acknowledge that all of the named Defendants are, indeed, parties to the agreement. Defs.' Opp'n, at 1–2. Moreover, while Section VI is entitled "Arbitration," and contains provisions related to arbitration, the provision regarding service of process does not contain any language limiting its scope to disputes brought in arbitration, and is both referenced by, and itself makes reference to, provisions in Section IV which have no relation to arbitration.

Looking to Section 4.3, entitled "Notices" to which the Section VI service of process provision refers, its terms are broadly applicable to "[a]ll notices, requests, consent, demands and other communications hereunder." While it does not specifically state that it is intended to apply to notices and communications pertaining to lawsuits, the provision states that *all* notices and provisions are to be transmitted in this manner. Reading this together with the provision in Section VI, which refers to it, and Section 4.5, which itself refers to Section VI, the parties agreed to two potential methods of service—emails sent to the email addresses provided, or mail sent to the mailing addresses provided.[19]

---

[19] There is no relevant provision of the contract which contains Plaintiff's address, but it does appear in the letterhead atop the contract, right above Columbia Steel's contact information. MCA, at 1.

- 19 -

The parties argue at length regarding whether service was properly effectuated under New York law in accordance with CPLR § 308, CPLR § 311, and CPLR § 311-a. However, courts have routinely held that parties are free to contract around the statutory requirements for formal service, and may even contract to receive service by email. *Lisa Cooley, LLC v. Native, S.A.*, No. 20-CV-5800, 2021 WL 860591, at \*5 (S.D.N.Y. Mar. 5, 2021); *Alfred E. Mann Living Tr. v. ETIRC Aviation S.a.r.l.*, 78 A.D.3d 137, 140 (1st Dep't 2010) (upholding service by email); *Wynwood Cap. Grp. LLC v. Confluence Corp.*, 82 Misc. 3d 1247(A), 209 N.Y.S.3d 829 (N.Y. Sup. Ct. 2024) (collecting cases); *see also Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16 (1964) (parties may waive service). In doing so, courts have also routinely held that adherence to the agreed-upon terms of service properly effectuates service, regardless of receipt. *Mastec Latin Am. v. Inepar S/A Industrias E Construcoes*, No. 03-CV-9892, 2004 WL 1574732, at \*3 (S.D.N.Y. July 13, 2004) (finding service proper under contract even when agent designated to accept service denied being authorized to accept service, and returned papers); *Red Fort Cap., Inc v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 472–73 (S.D.N.Y. 2019) (finding service to address provided in contract proper, even when not received as contract required, because defendant failed to update address). Service in accordance with these terms begins the 30-day removal period. *Mastec*, 2004 WL 1574732, at \*3; *Silverman*, 2023 WL 2753055, at \*3.

Even when the parties contractually require receipt in order for service to be effective, courts have still held that a party's failure to update the contact information for service, as provided in the contract, renders service to the address called for in the contract proper, regardless of receipt. *Red Fort Cap.*, 397 F. Supp. 3d at 472–73. This is because, "[w]here service is to be effectuated by means of a contractual provision, an individual 'will not be permitted to take advantage of his own wrong, and to escape liability for not rendering his promised performance by preventing the

- 20 -

happening of the condition on which it was promised.'" *Id.* at 473 (quoting *In re Bankers Trust Co.*, 450 F.3d 121, 127 (2d Cir. 2006)). Notably, under New York law, language which is identical to the first half of the clause at issue here has been held to "expressly waive[], in writing, any right to formal service of process." *Alfred E. Mann*, 78 A.D.3d at 139–40 (upholding service under contract language stating that "GUARANTOR HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS, COMPLAINT AND OTHER PROCESS ISSUED IN ANY SUCH ACTION OR SUIT" and providing for service via two email addresses).

Here, the contract at issue was executed less than eight weeks prior to service being attempted, and contains at least four separate provisions in which Defendants either warranted that the contact information was true and correct, or else required that Defendants update said information or notify Plaintiff of any changes to their operational status—the latter of which would necessarily apprise Plaintiff of whether the office address in question was current.[20] Defendants, who have the burden of persuasion on this motion, have not attempted to allege that they properly updated this information in accordance with the contractual obligations. Instead, Defendants, both in the affidavit submitted to this Court, and in the affidavit submitted to the state court, repeatedly aver that Plaintiff should have mailed service to other addresses, based on the assertion that Plaintiff either should have known, or could have determined through research, that Defendants were no longer located at the address provided in the contract, or else were never located at the address provided in the contract. *See, e.g.*, Theisen Decl. ¶ 6 ("The process server did not mail it to my residence, even though my residence . . . was public information, known to the Plaintiff, and easily available at the time by simply doing a Google search, or search of the public records and land-line telephone number at that address in my name."). Similarly, Defendant Theisen alleged

---

[20] These provisions are detailed in the Background section, *supra*.

in the state court affidavit that Plaintiff should not have sent the summons and complaint to the mcranon@csirialto.com email address because Plaintiff should have known the email address to be "defunct." Defendants further protest that Plaintiff "could have, but did not, even send or email a courtesy copy of the motion [for default judgment] papers to my attorney." Theisen Decl. ¶ 10.

These arguments are unavailing. As discussed, under New York law service has been properly effectuated when the agreed-upon process has been performed in accordance with the contract's terms. As compliance with the contract renders service proper under New York law, courts examining the propriety of removal have held that proper contractual service begins the 30-day removal period, even when receipt fails, if the party asserting non-receipt failed to update the relevant contact information. *Mastec*, 2004 WL 1574732, at \*3. Indeed, courts have held that failure to strictly conform to the contracted-for service provisions would render service *improper*. *Wynwood Cap. Grp.*, 209 N.Y.S.3d 829. Thus, had Plaintiff mailed or emailed the complaint and summons to different addresses, as Defendants argue it should have, Plaintiff would not have properly served Defendants in accordance with the terms of the contract, absent a proper modification of the contact information therein. Moreover, the mailing of a courtesy copy similarly would not have effectuated service as courtesy copies, when not contracted for, are not sufficient. *Silverman*, 2023 WL 2753055, at \*3; *Cedar Dev. E., LLC v. Town Bd. of Hurley*, No. 121CV289, 2021 WL 3422342, at \*3 (N.D.N.Y. Aug. 5, 2021) ("The courtesy copy of the complaint emailed to [defendant's attorney] . . . , therefore, did not trigger the thirty-day removal period."). While Defendants allege that Plaintiff either knew or should have known that the contact information was no longer valid, Defendants notably do not allege that they modified the contract, such as via a notification in writing. Moreover, Defendants do not assert the basis for Plaintiff's purported knowledge of any new addresses or email addresses, with the exception of Defendants' counsel's

email address for courtesy copies (a method which, as stated, would not effectuate service). As Defendants bear the burden of persuasion on this motion, these deficiencies are fatal to Defendants' arguments. *Kahlon*, 270 F. Supp. 3d at 588 (noting that defendants have burden of persuasion on motions to remand).

In sum, the contract language at issue matches, verbatim, language that has been held to waive formal service and to bind guarantors to email service; thus, there is no question that such language plainly did so here. *See Alfred E. Mann*, 78 A.D.3d at 139–40. Moreover, the provision in *Alfred E. Mann* did not contain the language authorizing the guarantors to accept service on behalf of the obligor, as does the language here. As such, the provision authorized the guarantor-Defendants here to also accept service on behalf of the obligor-Defendant. While even this provision alone has been held to waive formal service, the other two provisions in the contract lend further support for that conclusion, and provided for permissible service by mail. As a result, the Court finds that the contract at issue waived formal service and provided agreed-upon alternative methods of service. The Court also finds that Defendants' arguments, specifically as they pertain to the methods by which Plaintiff should have, according to Defendants, reasonably served process, are unavailing because those methods would not have complied with the terms of the contract as written.[21] The Court will now examine whether service was properly effectuated according to those terms, whether by email or by mail.

Here, the documents in question were both mailed and emailed to Defendants, in a manner which complied with the contract, on multiple occasions. First, on December 15, 2022, the process server mailed, via First Class mail, the complaint and summons to the individual Defendant

---

[21] While Defendants did not raise the service provisions in the contract, and thus their arguments are not actually directed at those provisions, Defendants' arguments speak directly to what steps Plaintiff should have taken, and the Court has found that Plaintiff should have taken the steps provided for in the contract. Defendants arguments thus inherently arise at this juncture in the analysis.

Theisen at the Linden Avenue address. *See* Levy Aff., Ex. 1, at 21. This, at minimum, properly complied with the terms of the contract regarding the method and destination of mailing, although it does not necessarily comply with Section 4.3, "Notices," which requires receipt thereof. Indeed, Defendants allege that Theisen never received that mailing, which Theisen, in his declaration, appears to attribute to the fact that "the business was shutting down." Theisen Decl. ¶¶ 7–8. However, as discussed, Theisen had a contractual obligation to notify Plaintiff that the business was shutting down, and does not allege that he did so.[22] Moreover, Defendants are not entitled to rely on their failure to update the contact information, as required by the contract. *Red Fort Cap.*, 397 F. Supp. 3d at 472–73. Simply put, Plaintiff cannot be said to have violated Section 4.3, which requires receipt of notices, when Defendants' failure to furnish more convenient contact information was their own doing.

Moreover, the mailing of the complaint and summons to the address provided for in the contract not only properly served Theisen. As the owner and principal of all of the corporate Defendants, Theisen was inarguably authorized to accept service of process on behalf of all of the corporate Defendants, all of whom were listed, together, on the summons that was sent with the complaint on December 15, 2022. To be sure, under the terms of the contract, Theisen, as a guarantor, was further authorized to accept service on behalf of all of the corporate Defendants according to the terms therein, in addition to being inherently vested with that authority as owner of those corporate entities. As the summons and complaint both listed all of the Defendants to the action, service of those documents upon Theisen to the contractually agreed-upon address would

---

[22] Theisen alleges that he notified customers that the business was closing, a group of persons or entities which the Court presumes, based on Defendants' allegation that Plaintiff was a lender, did not include Plaintiff. Theisen Decl. ¶ 2. Theisen also provides no support for the contention that the address of his residence at 2nd Avenue was known to Plaintiff. Moreover, Theisen alleges that Plaintiff's counsel began communicating with Defendants' counsel in May 2023. Theisen Decl. ¶ 10. Thus, the Court cannot even draw the inference that the parties were communicating with one another regarding the closure of the business prior to that date, based on the facts provided.

effectuate service on behalf of all of the corporate Defendants. Thus, Defendants were properly served via this mailing.

On January 27, 2023, Defendants were again mailed a copy of the summons and complaint to the Linden Avenue address, as provided in the contract, this time by Plaintiff's counsel. This mailing was documented in an "Affirmation of Additional Notice Pursuant to CPLR § 3215(g)" which states that Plaintiff's counsel "served or caused to be served" copies of the summons and complaint to Theisen at the Linden Avenue address via First Class mail.[23] Again, this mailing was sent to the contracted-for location, and the recipient was the individual Defendant and all of the corporate Defendants. This, again, would properly begin the statutory removal period, as it complied with the terms of the contract.

On July 24, 2023, Defendants were, pursuant to an order issued by the state court Justice in response to Plaintiff's motion for default judgment, mailed the applicable motion papers, including "a copy of the papers upon which [the motion] was granted." *See* Affirmation of Service, ECF No. 1–37. Notably, the motion papers, and the papers upon which it was granted, included the complaint and summons. *See* Notice of Removal, ECF No. 21. The motions papers were mailed to all Defendants at the Linden Avenue address, and the individual Defendant Theisen at the 2nd Avenue address. They were also emailed to the email address provided for in the contract. Thus, service was properly effectuated upon all Defendants, in July 2023, according to not one, but *two* methods provided for in the contract.

Thus, the Court need not address whether service was properly effectuated in accordance with New York's statutory requirements. Indeed, Defendants were properly served in accordance

---

[23] Defendants challenge the wording "served or caused to be served," in a footnote, as invalid under New York law. As discussed, Defendants have waived this argument by raising it in a footnote. Nevertheless, it is unclear that this argument would properly apply to service effectuated in accordance with an agreed-upon contractual service term.

with the contract on at least one, if not three, separate occasions, between December 2022 and July

2023. Defendants' Notice of Removal, filed on October 26, 2023, was thus untimely.

An additional term in the contract further supports this conclusion. The contract contains

two provisions stating that Defendants "submit" to jurisdiction in accordance with the terms of the

contract. These provisions, known as "service of suit" clauses, have been held to waive the right

to removal. Specifically, Section 4.5 of the contract provides as follows:

> MERCHANT AND ANY GUARANTOR(S) HEREBY CONSENT AND AGREE
> THAT THE STATE OR FEDERAL COURTS LOCATED IN NEW YORK
> SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE
> ANY CLAIMS OR DISPUTES BETWEEN MERCHANT and/or
> GUARANTOR(S) AND COMPANY PERTAINING TO THIS AGREEMENT
> AND/OR THE GUARANTY OR TO ANY MATTER ARISING OUT OF OR
> RELATED TO THIS AGREEMENT AND/OR THE GUARANTY . . . .
> *MERCHANT AND GUARANTOR EXPRESSLY SUBMIT AND CONSENT IN*
> *ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED*
> *IN ANY SUCH COURT,* AND GUARANTOR HEREBY WAIVES ANY
> OBJECTION THAT IT MAY HAVE BASED UPON LACK OF PERSONAL
> JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS. . . .
> Any suit, action or proceeding arising hereunder, or the interpretation, performance
> or breach hereof, shall, if Company so elects, be instituted in any court sitting in
> New York, (the 'Acceptable Forums"). *Merchant agrees that the Acceptable*
> *Forums are convenient to it and submits to the jurisdiction of the Acceptable*
> *Forums and waives any and all objections to jurisdiction or venue*.

MCA, at 5 (emphases added). Under the relevant portions, as emphasized above, Defendants

agreed to "submit" to the jurisdiction of one of the enumerated permissible forums. These

provisions "waive the right of removal because the defendants . . . . agreed to be restricted to the

court in which suit was filed, be it state or federal." *Cong. Fin. Corp. v. Bortnick*, No. 00 CIV.

6361, 2000 WL 1634248, at \*3 (S.D.N.Y. Oct. 31, 2000) (citing *Travelers Ins. Co. v. Keeling*, 996

F.2d 1485, 1487 (2d Cir. 1993)). "Under controlling precedent in this Circuit, a valid service of

suit clause operates as a waiver of the defendant's right to remove a state court action to federal

court." *Ins. Co. of Pennsylvania v. TIG Ins. Co.*, 933 F. Supp. 2d 510, 511 (S.D.N.Y. 2013) (citing

*Dinallo v. Dunav Ins. Co.*, 672 F. Supp. 2d 368, 370 (S.D.N.Y.2009), *aff'd*, 402 F. App'x. 595, 596 (2d Cir. 2010)).

While cases involving service of suit clauses have commonly involved insurance contracts, the Second Circuit has not held that service of suit clauses are only effective in insurance contracts. Indeed, the idea that the parties agreed to "submit" to the jurisdiction of an agreed-upon forum, even among an array of agreed-upon fora, and thus have agreed to cooperate with those proceedings, is the tenant underlying such cases. *Dinallo*, 672 F. Supp. 2d at 370. This comports with caselaw upholding the validity of binding forum selection clauses on the principle that such clauses similarly involve submitting to the jurisdiction of the courts selected. *See, e.g.*, *Mastec*, 2004 WL 1574732, at *3 (holding that forum selection clause selecting state or federal court in New York submits a party to the jurisdiction thereof). The submission language in service of suit cases mirrors that at issue here. *See Bortnick*, 2000 WL 1634248, at *3 (describing service of suit language as a provision indicating that party "will submit to the jurisdiction of any [c]ourt of competent jurisdiction").

Given the above, Defendants have waived formal service, and either untimely filed their Notice of Removal, or else waived the right to remove entirely. While both parties have failed to apparently realize, or address, this issue,[24] Defendants bear the burden to demonstrate the propriety of removal on a motion to remand. Moreover, Defendants have primarily put the contract and other documents discussed above before the Court for consideration on this motion by arguing, at length, the terms of said contract, quoting heavily from it, and repeatedly citing to multiple materials submitted to the state court in support and opposition to the motion for default judgment that was

---

[24] More likely, Defendants, who provided lengthy argument from the contract's terms, identified the issue but declined to draw Plaintiff's attention to the applicable provisions, realizing that Plaintiff had apparently failed to argue it in state court.

argued there.[25] The Court has properly considered those materials and found that they foreclose Defendants' argument that removal was proper.[26]

Given the foregoing, the Court respectfully recommends that this action be remanded to state court.

### B. Defendants Waived Their Right to Remove by Demonstrating an Intent to Litigate in State Court.

Plaintiff argues that Defendants have also waived their right to remove by demonstrating an intent to litigate this action in state court. Pl.'s Mem., at 2–3, 8–9. In support of that contention, Plaintiff argues that Defendants demonstrated an intent to litigate in state court by (1) filing and arguing a dispositive cross-motion in state court, and (2) participating in and requesting conferencing in state court to resolve the dispute. Pl.'s Mem., at 8–9. In response, Defendants first argue that "the Second Circuit has never adopted a waiver exception to removal."[27] Defs.' Opp'n,

---

[25] For example, Defendants' opposition provides multiple pages of briefing regarding the terms of the contract, cites to Theisen's affidavit submitted in state court, which also included several relevant attachments and factual averments, and cited to numerous applicable records pertaining to the motion for default.

[26] For avoidance of doubt, given Defendants' lengthy argument that the contract is usurious, the Court notes that the service of process provisions at issue involve questions regarding whether jurisdiction in a particular forum is proper. Specifically, service of process is a method through which jurisdiction in a given court is obtained. *See, e.g.*, *Szukhent*, 375 U.S. at 315–16 (noting that parties, in contracting for service, "may agree to submit to the jurisdiction of a given court"); *Murphy Bros.*, 526 U.S. at 347 (proper service brings a party within the court's authority); *Mastec*, 2004 WL 1574732, at *3 (noting that forum selection clauses submit a party to the selected court's jurisdiction). To that end, forum selection clauses in contracts which are alleged to be usurious are still applied. *PIRS Cap., LLC v. Chen*, No. 23 CIV. 10343, 2024 WL 3938367, at *7–9 (S.D.N.Y. Aug. 26, 2024). Indeed, unlike choice of law clauses, *see id.* at *9, forum selection clauses are a threshold, nonmerits issue. *DarkPulse, Inc. v. FirstFire Glob. Opportunities Fund, LLC*, No. 23-78, 2024 WL 1326964, at *3 (2d Cir. Mar. 28, 2024). Similarly, the question of whether removal was proper is a threshold, nonmerits issue. To that end, unlike a choice of law clause, which—by definition—defines the substantive rights of the parties, or a class action waiver clause, which speaks to parties' available methods to pursue rights, remand to the Nassau County Supreme Court does not, as a matter of public policy, undermine the pursuit of rights as a substantive matter. In fact, Defendants, in arguing that the contract is usurious, rely on New York law, presumably because the contract contains a New York choice of law clause. Defs.' Opp'n, at 1–5; MCA, at 5. It would be contradictory for Defendants to, in one breath, invoke the protection of New York law by applying the principal that the parties contractually agreed to the choice of law clause, while disclaiming the parties' forum selection clause and service of process clause governing the litigation of such matters before the New York courts. *See* MCA, at 5, § 4.5 (providing that state or federal courts in New York have exclusive jurisdiction to hear disputes under the contract). The Nassau County Supreme Court is well equipped to address these substantive questions of New York contract law. In any event, the Court is not in a position to address the substantive merits of the contract before Defendants have even filed a responsive pleading.

[27] Given the limited appealability of motions to remand, it is perhaps not surprising that the Second Circuit has not addressed this issue. Nevertheless, the Court finds this argument unavailing. Indeed, Defendants themselves concede

at 7. Defendants then proceed to argue, under an array of precedent from district courts in this Circuit, that "well-established case law" demonstrates that defensive motion practice has not been held to waive the right to remove, even when dispositive, provided such motion practice does not seek resolution of an action on the merits. Defs.' Opp'n, at 7–10. Thus, Defendants argue, the cross-motion to dismiss in state court was defensive, and did not waive the right to remove. Defs.' Opp'n, at 7–10. Defendants do not address Plaintiff's argument that Defendants participated in conferencing. Defs.' Opp'n, at 7–10. On reply, Plaintiff raises Defendants' failure to address its argument regarding conferencing, and submitted emails related to such conferencing, including an email from the state court regarding a "mediation/settlement conference" which had been scheduled for November 1, 2023. Levy Reply Decl., Ex. 5.

Courts in this Circuit have held that a party may waive its right to remove by demonstrating an intent to litigate in state court. *Heafitz v. Interfirst Bank of Dallas*, 711 F. Supp. 92, 96–97 (S.D.N.Y. 1989). "This waiver exception is based on the premise that the 30-day limitations period set forth in Section 1446 is not jurisdictional and therefore, may be waived on a theory of estoppel where a [defendant] takes affirmative steps in state court that are inconsistent with removal, such as, moving in state court to dismiss an action on the merits." *Stemmle v. Interlake Steamship Co.*, 198 F. Supp. 3d 149, 165 (E.D.N.Y. 2016) (citation omitted). "[A]ny waiver of the right of removal must be clear and unequivocal." *Laguerre v. Nat'l Grid USA*, No. 21CV881, 2021 WL 7906561, at \*5 (E.D.N.Y. Sept. 3, 2021) (citation omitted). "Where the defendant took a 'substantial offensive or defensive action' in state court, such as filing a dispositive motion or a permissive

---

that the doctrine of waiver is supported by "well-established case law." Defs.' Opp'n, at 10. This Court declines Defendants' invitation to depart from the well-established caselaw of courts in this Circuit which has been applied, apparently on a rather consistent basis, for more than 30 years. *See, e.g.*, *Heafitz v. Interfirst Bank of Dallas*, 711 F. Supp. 92, 96 (S.D.N.Y. 1989).

- 29 -

counterclaim, the federal courts are more likely to find the intent to waive to be 'clear and unequivocal.'" *Id.*

Ultimately, the Court need not address at length the merits of this issue because Defendants, who bear the burden of persuasion on this motion, have chosen not to respond to Plaintiff's argument regarding Defendants' affirmative actions taken to conference the dispute, including the scheduling of the settlement conference.[28] As Defendants argue, some courts, in applying the doctrine of waiver, do draw a distinction between actions taken to reach a final resolution of a dispute on the merits, as opposed to defensive actions that preserve the status quo. *See Guevara v. Delta Air Lines, Inc.*, No. 21CV664, 2021 WL 2548989, at *2 (E.D.N.Y. June 22, 2021). Applying this reasoning, however, a settlement conference or mediation would indisputably be an action taken toward a resolution on the merits. Thus, even crediting the distinction that Defendants advance, that distinction would apply here. As Plaintiff's assertion that Defendants actively participating in scheduling a mediation or settlement conference is undisputed, and the Court must resolve all doubts against removability, *Lupo*, 28 F.3d at 274, *Taylor*, 15 F.4th at 150, the Court resolves this question against removability. Indeed, applying Defendants' reasoning, as detailed above, a settlement conference or mediation is indisputably directed toward a resolution on the merits. Thus, even assuming that cases applying the waiver doctrine have drawn such distinction, such distinction would be applicable here.

---

[28] Although Plaintiff submitted the email from the state court Justice's chambers on reply, Plaintiff plainly raised the argument in its opening memorandum that Defendants took steps to conference the dispute. Defendants chose not to respond to it in opposition, and, after Plaintiff submitted the email regarding the settlement conference on reply, did not seek leave to file a sur-reply. Indeed, Defendants effectively waived the conferencing argument by failing to mention it at all.

The Court thus finds that Defendants waived their right to remove by demonstrating an intent to litigate the matter in state court. Consequently, the Court respectfully recommends that this action be remanded to state court.

## II.    Plaintiff's Motion for Attorneys' Fees Pursuant to 28 U.S.C. § 1447(c) Should Be Denied.

In ordering remand, a court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[A]bsent unusual circumstances, attorney's fees should not be awarded [under § 1447(c)] when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Cap. Corp*., 546 U.S. 132, 136 (2005). Where no objectively reasonable basis exists, fees may be awarded. *Id.* at 141. "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140. "In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure . . . in a given case." *Id.* at 141. "A basis for removal is 'objectively reasonable' if the removing party had a colorable argument that removal was proper." *Nguyen v. Am. Express Co.*, 282 F. Supp. 3d 677, 683 (S.D.N.Y. 2017) (quoting *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 407 (S.D.N.Y. 2014)); *see also Flores v. ECI Transp., Inc*., No. 23-CV-2037, 2023 WL 5803593, *2 (S.D.N.Y. 2023). Courts applying such precedent have been reluctant to award fees in all but the most extreme circumstances. *See Paruchuri v. Re.Imagin, Inc.*, No. 22-CV-10998, 2023 WL 4266936, at *8 (S.D.N.Y. 2023).

Here, attorneys' fees are not warranted. Defendants presented several arguments that could arguably have been meritorious given New York courts' strict compliance with the statutory

requirements for service.[29] *Washington Mut. Bank v. Murphy*, 127 A.D.3d 1167, 1174 (2d Dep't 2015) (collecting cases holding that New York requires strict compliance with statutory service rules); *Glob. Liberty Ins. Co. v. Surgery Ctr. of Oradell, LLC*, 153 A.D.3d 606, 607 (2d Dep't 2017) (holding service on foreign LLCs must strictly comply with statutory requirements). While these arguments were unavailing, given that Defendants have expressly waived formal service, Plaintiff also ostensibly did not realize that the contract contained multiple provisions expressly waiving service.[30] This is particularly surprising given that contracts often waive service. Indeed, the Court promptly found the applicable provisions of the contract, when reviewing the nearby provisions to which the parties had cited. The Court thus cannot say that Defendants' removal rose to the level warranting an award of attorneys' fees. In any event, Plaintiff conceded, during briefing on the state court motion for default judgment, that "LCF litigates its matters in-house, [and thus] its attorneys' fees are difficult to calculate. As a result, LCF opted to insert [a] legal fee provision into the Agreement as a liquidated damages clause that caps the total amount of attorneys' fees." Notice of Removal, Ex. 26, ECF No. 1–26. The Court thus wonders how Plaintiff intended to meet the lodestar requirements on a formal motion for fees, or the requirement that counsel submit a contemporaneous record of time expended on the instant motion, given Plaintiff's averment above.

Thus, the Court respectfully recommends that Plaintiff's request for attorneys' fees pursuant to 28 U.S.C. § 1447(c) be denied.

---

[29] Indeed, Defendants, who were served in California, were almost certainly properly served under California's approach, which allows for more liberal substantial conformance with service of process rules. *See Summers v. McClanahan*, 140 Cal. App. 4th 403, 407–11 (2006); Cal. Civ. Proc. Code § 415.20. As a result, had this action originally been filed in federal court, Defendants almost certainly would have been properly served under the Federal Rules of Civil Procedure, which permit service in accordance with the state where the court sits, or the state where defendants are served. Fed. R. Civ. Pro. 4(e)(1).

[30] The Court draws no conclusion regarding whether Defendants' arguments pertaining to the propriety of removal would have been persuasive had they not been foreclosed.

## CONCLUSION

For the reasons set forth above, this Court recommends that Plaintiff's motion to remand be GRANTED, and that Plaintiff's request for attorneys' fees be DENIED.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/ Steven Tiscione
Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
September 17, 2024

- 33 -